at all. Arguments not to exceed 15 minutes per side. Mr. Simpkins, you may proceed for the appellants. Mr. Simpkins, you may proceed for the appellants. Good morning. Good morning, your honors. To please the court, my name is Samuel Simpkins. I represent appellant Mr. Michael Angelo in this matter. I'd like to reserve two minutes for rebuttal, if I may. On its face, this is a RICO case that State Farm brought against Angelo, which the parties privately settled in February 2021. However, the issues on appeal largely revolve around another case altogether. That is a QTAM case filed under the False Claims Act by Mr. Angelo on behalf of the government. The central issue here is whether the private settlement... Has the QTAM case been dismissed? It has not, your honor. So it's still pending? It's still pending. I see. In the Eastern District of Michigan, yes, your honor. And remind me, is your client now done with Judge Cleland, I think? Judge Cleland asked, which is right, the government, and say, please dismiss? Yes, your honor. So the final, the most recent order from Judge Cleland, who has actually since retired and the case has been reassigned to Judge Edmonds, but was for Angelo to file with the court a form that State Farm had drafted, which was a formal request for consent from the United States government for voluntary dismissal. I guess my question is, what's left in the case is what I'm trying to figure out. Yes, your honor. So the court has not made any ruling on that filing. It is not itself a motion for voluntary dismissal, which would be self-effectuating. Would you mind if the government says, we're done here? Are you okay with that? In other words, what are you trying to do on appeal? Are you trying to undo the letter that's already been written asking the government to dismiss? What is it you're trying? Yes. What matters to you? Yes, your honor. I appreciate the question because there are several significant issues that will flow from the court's decision here today. And it's not limited to just the scope of this case, actually. There are significant policy considerations that will reverberate throughout the False Claims Act jurisprudence. That's not our thing. All right. So try something else. How has your client referred with the reverberations? Most recently, the district court, in this case, ordered Angela to pay $1.2 million because he is, quote, contractually obligated to indemnify State Farm for all expenses and liabilities from the key ten. How does that relate to the letter that's now been written and you're not trying to undo? We are also trying to undo that. Because it has not been ruled on, Angela and my client would still be able to withdraw that. You don't want us to say you didn't have to do it and you can get it retracted? Is that the thing that's live in front of us? Correct, your honor. The ultimate ruling that we would be seeking is that the key ten case neither is encompassed by the settlement. And even if we got all that, but what's weird is the letter's now out the door. It has not been effectuated by the court, and so it could be withdrawn. Why does it have to be effectuated? It's to the government. There has been no dismissal is what I mean. Yeah, the letter was filed on the court's docket. But did the government consent or not? And I understand there are other relators as well, right? So it's not about the dismissal of the entire case. It's just about the dismissal of your client. So did the government consent after you filed that to the dismissal of your client or is that still TBD? Yes, the government has issued a partial consent whereby it agrees for Angelo to withdraw his portion of the key ten claim against State Farm. And do you need the district court now to rule on whether Mr. Angelo can actually withdraw or is that decided? It has not been decided and we argue that the court does need to rule on that still. And you want Angelo back in the key ten case? Correct, yes. As I mentioned, the decision here today actually has vast implications beyond the scope of this case. Not only did the district court misinterpret. And the reason you think it's significant is you're afraid that Judge Cleland and you're afraid now us are going to misunderstand how key ten works? Is that your main point? The main point, Your Honor, is that the district court authorized a relator to privately negotiate a pending key ten case and pocket the entire consideration, withholding from the government its due, which is at least 70%, sometimes as much as 85% of the settlement proceeds. The government received no consideration for the settlement that Angelo entered into with State Farm, which the district court said applies to the key ten case. So the government has essentially been defrauded by the district court's order. It's not as if State Farm and the government have nothing to do with each other in the key ten case. It's quite understandable why State Farm would insist on extending just beyond direct litigation between Angelo and State Farm, right? That seems pretty obvious to me. I think it would be reverberating to say that wasn't true. I'm sorry, maybe I'm misunderstanding. I'm just making the point that the key ten case involving the government does bear on State Farm. Correct. Okay, so it's understandable why State Farm would say, if we're settling, I want to cover everything related. This is related. Yes, you're correct, Your Honor. But if we assume that the language of the settlement itself encompasses the key ten case, which appellant rejects that interpretation, but if we're taking that as assumed, there is a policy in place to enforce private agreements. However, as the Supreme Court explained in Town of Newnan v. Roonery, it's a balancing test, and a promise is rendered unenforceable if the interests in its enforcement are outweighed by the harm to public policy through its enforcement. The district court's order implicated and violated three strong and very clear public policies here. The first was to motivate theulators to uncover and prosecute key ten claims. The second is to protect whistleblowers. And the third is to deter and punish wrongdoing. Just so I can understand your argument, are you first arguing that the key ten action is just not even encompassed within the language, and then even if it were the settlement agreement or at least kind of paragraph five, that I would say very clearly includes it, is void as contra-public policy? That's correct, Your Honor. Okay. Yes. Critically- Can you ask- Oh, go ahead. I just want to make sure. So the first point, are you relying on the amended complaint or the original complaint to make this argument? From the key ten case? Yes. As the district court correctly ruled- That was the either or. You said- Sorry. The amended or the complaint. What is it? You're trying to use the amended complaint. The amended complaint, Your Honor. Is that argument- I thought the rule was we have to look at it, the complaint, because that was the one that was on the books at the time. Well, that is the position that State Farm takes, but the district court actually held that an amendment replaces the original for all purposes, and the district court analyzed the issue under the amended complaint, and the appellant's position is that that was correct. And frankly, candidly, the appellants also argue that it doesn't make a difference. The original complaint, as well, is of the same nature as the amended complaint in that the allegations there are that State Farm improperly created and submitted false Section 111 reports to the government to conceal the fact that it had received certain claims. State Farm argues that the RICO case and the key ten case are two sides of the same coin. They say that both cases require a court to determine the veracity of claims for services. That's simply not true. The key ten case makes clear that State Farm relinquished its opportunity to contest to medical necessity and reasonableness when it lied to the government by concealing the fact that it had certain claims. Section 111 is not triggered simply when an insurer has to pay a claim. It's triggered when they receive a claim, and that's important because Medicare has a policy in place where they pay claims timely on a conditional basis, and then they look to their records and they see, are there any other insurance company who has primary responsibility for this? And then they coordinate benefits. They send demand letters. If the insurance company says, yes, we have that claim too, but we believe it wasn't medically necessary or related to an accident, then there's an adjudication process. There's a 45-day window in which that process takes place. That process never took place because State Farm never reported its claims. That's a vastly different scenario than the RICO case, which is allegations that Angeles facilities submitted bills for allegedly unnecessary medical services. They're different. Based on the plain language of the settlement itself, Appellant does argue that the key ten case is simply not encompassed by it at all. There are two errors that the district court made there. First, in finding that there was a meeting of the minds as to include the key ten case, and second, in misinterpreting two key terms. Start with the meeting of the minds. This settlement agreement clearly contemplates both actions, known or unknown, foreseen or unforeseen in paragraph five. Certainly not everybody had to know about the key ten action, and certainly it wouldn't because they're kept under seal.  Honestly, it doesn't matter. Michigan courts, and it's undisputed that Michigan law controls the interpretation here, Michigan courts have held that meeting of the minds is judged by an objective standard, not what the parties subjectively knew or do know. There's two factors. It looks to the express words of the parties and their visible acts. The express words of the settlement says clearly that it is to resolve State Farm's RICO allegations, and again- And all claims or suits of any kind whatsoever, whether in law or net equity, known or unknown, foreseen or unforeseen, more things, that just arise from these types of allegations. It doesn't say, like, we're settling this RICO case. Correct, Your Honor. Yes, it explicitly, and it even names certain claims that were for services provided. Right, the MBA, anything that's MBA health-related is encompassed in here, any Michelangelo entity. In fact, the district court held that the settlement does not constitute a general release. The district court said that it only applies to claims that could have been brought in that litigation or that arise from MBA-related health care services. Another aspect of the express words analysis is the fact that Angelo executed an affidavit, which was along with and directly incorporated into the settlement, and in that he states, quote, that he has full authority to enter into agreements regarding the release of these claims, unquote, and attesting that he, quote, hereby withdraws with prejudice all such claims. It's undisputed now that Angelo didn't have that authority as to the KETAM claim. So the express words of the settlement could not have applied to the KETAM case. The Visible Acts of the Parties also supports this position. Prior to settling the case, Angelo approached the government and said that there was this proposed settlement and asked if there was anything that he should be careful of because there was this pending KETAM case, and the government confirmed that there were no concerns. Additionally, pursuant to the settlement, Angelo promptly dismissed and released 347 claims. So there was substantial completion and adherence to the settlement, but he continued to cooperate with the government and amend the complaint to add further allegations. And so these visible acts at the time of negotiation and enforcement reveal that the parties couldn't have contemplated by an objective standard to include the KETAM case. There's also two key phrases that... I'm sorry, I see my time is up, Your Honor. You'll get your full rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Matt Allen for the Appellee State Farm. I'll begin... Is this still a live case? Your Honor, I don't think it is in the sense that this case rises and falls on whether Judge Cleland was correct to allow the government the opportunity to unambiguously speak for itself in deciding whether to dismiss the KETAM claims. So the only issue on appeal is whether he was correct in interpreting all steps necessary under the agreement to seek discontinuance. Well, the reason your friend says it's still live is he wants to undo that order and he wants to take back the request to drop him from the KETAM case. That's the alleged reason it's still live, if I'm understanding it correctly. I'm just curious if you're like, okay, I guess that's fair, it's pretty minor, but there's still something for the Court to resolve. And I don't believe there is, Your Honor. I think that what happens after Judge Cleland ordered Mr. Angelo to take the necessary steps of requesting the government's consent to dismiss the KETAM case, that ended the Court's role and obligation. What happens in the KETAM case ultimately is irrelevant to these proceedings. So I agree with Your Honor that there is nothing left for this Court to do. And I disagree with Mr. Simpkin's proposition that what we're talking about here today is the KETAM case and KETAM public policy. I just think that's exactly wrong. And so, Your Honor, I do believe there's nothing left for this Court to do. Okay, so to the extent there is something left, what's your take on his argument in terms of whether Judge Cleland was right to say the underlying settlement covered this obligation to request dismissal in KETAM? I think that the... At bottom, this is a contract case. And I think Judge Cleland looked at the settlement agreement and he got it right. And if you look at that settlement agreement, in exchange for settling State Farms' RICO lawsuit, which alleged a widespread and systematic insurance fraud scheme against Mr. Angelo, he gave State Farm a very broad release. Judge Blomkatz was talking about that with Mr. Simpkins. The language is very broad. Mr. Angelo promised to take all steps necessary to secure discontinuance of any lawsuits against State Farm that arise from no-fault services he provided to State Farm insurers. And Judge Cleland found that it did, under that very broad language. The tortured history in this case revolves around Mr. Angelo's efforts to avoid Judge Cleland's order. Indeed, if you look at paragraphs 12 and paragraphs 517 through 525 of the amended KETAM complaint, Mr. Angelo specifically alleges that he has direct knowledge of the information in the amended KETAM complaint from treating State Farm and other insured patients at his medical facilities for over 30 years. And if you look at his appellate brief, he even argues that he got the idea to sue State Farm from providing routine services to State Farm accident victims. So as a result of this, Judge Cleland said, proceed in good faith and take all steps necessary to dismiss that case under the language of this settlement agreement by soliciting the government's consent to dismiss. Mr. Angelo then spent two years avoiding compliance. Mr. Allen, I think we understand your arguments. So thank you very much. Thank you, Your Honor. I appreciate it. Mr. Simpkins, you'll get your rebuttal. Thank you, Your Honor. Your Honor, this Court has twice rejected enforcing settlements exactly like this. The Court on Health Possibilities held that, quote, these settlements manipulate, sorry, that such settlements, quote, manipulate settlements in ways that unfairly enrich the relator and reduce benefits to the government. Critically, the important policy and the objective of the FCA does not end when a case is filed and evidence is given to the district court, or to the government. The district court held that public policy is not frustrated because Angelo had already turned over his evidence. As Judge Strange observed, Judge Strange of this Court observed in United States v. Community Health Services, quote, providing evidence is just the beginning. The health possibilities decision was reaffirmed by this Court in Lampers. The third and fifth circuits have also held that allowing a relator to privately negotiate a release and a dismissal of a KETAM, a pending KETAM case with the defendant flouts the entire objective of the FCA. It allows them to enrich themselves and deprive the government of its due. While this Court has held that relators are agents of the government, that's the Holloway case, the district court has allowed... That's when the relators don't ask the government about dismissal. If all they do, they're not negotiating dismissal with the defendants, but they're just told they have to go to the government and just ask. Just ask, hey, will you dismiss this? Or will you consent for just to dismiss, for my client to dismiss his claims? Isn't that different? In fact, it's not, Your Honor. You're telling the government, hey, you get to choose. I mean, the government doesn't say yes. The order here was only that you ask. The government is still in... has the full authority to say, yes, we're going to consent, no, we're not going to consent. So it's hard for me to see how the government is being rolled here when the government maintains its authority to answer that question either way it wants. If I could respond in a two-part answer, Your Honor. First, the government has no authority to force a relator to continue pursuing a case. The settlement was entered into without the government's consent and knowledge, and so now the government has no real option to say we consent or we don't consent because the settlement's there. The relator can just sit on his hands and say, well, I'm not going to pursue it. In fact, that's exactly what the district court ordered. The district court didn't just say, you have to ask and then you're done. He said, after February 19, 2021, you should have never pursued the case, and you are now liable to indemnify State Farm for all expenses. The district court authorizes relators to turn cloak and do the bidding of defendants by refusing to respond to dispositive motions, refusing to take discovery, thereby, whether it's voluntary dismissal or involuntary dismissal for failure to prosecute, it infringes upon the government's rights because the government did not have a chance to agree or not agree to the settlement. Thank you, Your Honor. Thank you. Thanks to both of you for your helpful briefs and for your arguments. We appreciate it. The case will be submitted, and the clerk may call the next case.